## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

BRITTANY CORTAZAR, individually
and on behalf of all others similarly situated,

    Plaintiff,

vs.

CA MANAGEMENT SERVICES PARENT,
LLC,
      Defendant.

_____/

**Case No. 19-cv-2275-UU**

**CLASS ACTION**

**JURY TRIAL DEMAND**

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Brittany Cortazar ("Plaintiff"), by and through her undersigned counsel, hereby

brings files her Second Amended Class Action Complaint against Defendant CA Management

Services Parent, LLC ("Defendant") to secure redress for violations of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 (the "TCPA"), and alleges as follows:

### NATURE OF THE ACTION

1.    This is a putative class action brought under the TCPA.

2.    Defendant owns and manages the real property located at 400 Southwest 107

Avenue, Miami, Florida 33174, which is a student housing apartment complex—commonly

known as the "Identity Miami"—whose tenants are predominantly students currently enrolled at

Florida International University.

3.    In order to drive new potential consumers to the Identity Miami, Defendant

deployed an unsolicited telemarketing campaign in an attempt to bolster the amount of new leases

at its property in order to increase Defendant's re. that ultimately harmed thousands of consumers

in the process.

4.    Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal

conduct that has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

**PARTIES**

5.      Plaintiff is a natural person who, at all times material hereto, was a resident of Miami-Dade County, Florida.

6.      Defendant is a Delaware limited liability company whose prinicpa place of business is located at 130 East Randolph Street, Suite 2100, Chicago, Illinois 60601. Defendant owns and manages the real property commonly known as the Identity Miami. In addition to owning real property in Miami-Dade County, Defendant directs, markets, and transacts business throughout the State of Florida.

**JURISDICTION AND VENUE**

7.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500 in damages for each call in violation of the TCPA, which, when aggregated amongst a proposed class numbering in the tens of thousands, or more, exceeds the $5 million threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant

2

transacts business and markets its services within this district, thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## THE TCPA

9.      The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

10.     The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

11.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

12.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

16.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788

F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at \*49).

18.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

19.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (noting that the FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at \*3 (N.D. Ill. Dec. 1, 2014) (holding a defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

**FACTS**

22.     Defendant, as the Identity Miami's principal (if not only) owner and manager, stands to directly receive financial benefits by increasing the number of leased apartments at the Identity Miami—which is precisely what the subject text messages were designed by Defendant to do.

23.     Within the relevant time frame, Defendant's transmitted the subject text messages to Plaintiff's cellular telephone in an attempt attract Plaintiff (and new residents) to their property—the Identity Miami.

24.     On or about April 8, 2019 and May 7, 2019, Defendant sent the following telemarketing text messages to Plaintiff's cellular telephone number ending in 6529 (the "6529 Number"):



25.     Defendant's text messages constitute telemarketing because the text messages

explicitly encouraged the future purchase or investment in property, goods, or services—in this case, Defendant sought to entice Plaintiff to lease a new apartment at Defendant's property in the Identity Miami.

26.     The information contained in the text messages advertise Defendant's promotion to "Upgrade your lifestyle this Fall, and live luxurious at Identity Miami!" which promotes the amenities and appeal of Defendant's property in a direct effort to increase the number of residents living in the Identity Miami.

27.     Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

28.     Plaintiff is the subscriber and sole user of the 6529 Number and is financially responsible for phone service to the 6529 Number.

29.     Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted 30 to 60 seconds reviewing all of Defendant's unsolicited text messages. Each time she received a text message from Defendant, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at her phone to review the message.

30.     Further, Defendant hounded Plaintiff with persistent messages. Plaintiff was at school when she received the subject text messages, which resulted in an audible sound and the disturbance and disruption of her learning environment while attending a college class. The text that she received during class interrupted Plaintiff's education, causing her to view her cellular telephone and to not give her full attention to the class she was attending.

31.     Additionally, Plaintiff estimates that she wasted approximately 5 minutes attempting to research Defendant and the source of the messages through internet searches, as well

as attempting to determine how Defendant obtained her telephone number.

32.    Next, Plaintiff wasted approximately 10 minutes in discussions with an attorney on potential legal remedies for the unwanted spam text message.  This discussion led to another approximately 30 minutes retaining current Plaintiff's counsel in order to stop Defendant's unwanted and intrusive text messages.

33.    In all, Defendant's violations of the TCPA directly caused Plaintiff to waste at least 15 minutes of her time in addressing and attempting to stop Defendant's solicitations.

34.    Furthermore, Defendant's text messages took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages like those of Defendant pose a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being used by such unsolicited text messages.

35.    At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

36.    The text messages originated from telephone number 484-848, a number which upon information and belief is owned and operated by Defendant.

37.    The number used by Defendant (484-848) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the messages were personalized and sent from a telephone number operated by an individual.

38.    Further, the impersonal and generic nature of Defendant's text messages demonstrates that Defendant utilized an ATDS in transmitting the messages.

39.    To send the text messages, Defendant used a messaging platform (the "Platform")

that permitted Defendant to transmit thousands of automated text messages without any human involvement.

40.     The Platform has the capacity to store telephone numbers.

41.     The Platform has the capacity to generate sequential numbers.

42.     The Platform has the capacity to dial numbers in sequential order.

43.     The Platform has the capacity to dial numbers from a list of numbers.

44.     The Platform has the capacity to dial numbers without human intervention.

45.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

46.     To transmit the messages at issue, the Platform automatically executed the following steps:

(a) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

(b) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

(c) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers; and

(d) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

47.     The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

48.     The following graphic summarizes the above steps and demonstrates that the

dialing of the text messages at issue was done by the Platform automatically and without any

human intervention:



49.     Defendant's unsolicited text messages caused Plaintiff actual harm, including

invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

50.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this putative class

action on behalf of herself and all others similarly situated comprising the putative class defined

below (the "Class"):

> **All individuals (i) who were sent a text message relating to apartment rentals (ii) on his or her cellular telephone (iii) without giving prior express consent (iv) by or on behalf of CA Management Services Parent, LLC, Campus Acquisitions Management, LLC, CA Student Living Development and Management, LLC, or any of the buildings managed by those entities or their affiliates or predecessors, (v) from May 22, 2015 through the present.**

51.     Defendant and its employees or agents are excluded from the Class. Plaintiff does

not know the number of members in the Class but believes the Class members number in the

several thousands, if not more.

### NUMEROSITY

52.     Upon information and belief, Defendant has transmitted automated text messages

to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

53.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

54.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

(b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(c) Whether Defendant's conduct was knowing and willful;

(d) Whether Defendant is liable for damages, and the amount of such damages; and

(e) Whether Defendant should be enjoined from such conduct in the future.

55.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the putative Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

56.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

57.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

59.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
**Violations of the TCPA, 47 U.S.C. § 227(b)**

60.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

61.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

12

automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service ….." 47 U.S.C. § 227(b)(1)(A)(iii).

62.     Defendant—or third parties directed by Defendant—used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

63.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

64.     Defendant, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

65.     Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

66.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

67.     Plaintiff re-alleges and incorporates paragraphs 1-59 as if fully set forth herein.

68.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

13

69.     Defendant knew that it did not have prior express consent to make these calls and

knew or should have known that its conduct was a violation of the TCPA.

70.     Because Defendant knew or should have known that Plaintiff and Class Members

had not given prior express consent to receive the autodialed text messages, the Court should treble

the amount of statutory damages available to Plaintiff and the other members of the putative Class

pursuant to § 227(b)(3) of the TCPA.

71.     As a result of Defendant's violations, Plaintiff and the Class Members are entitled

to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C.

§ 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff Brittany Cortazar, on behalf of herself and all other members of

the putative Class, pray for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone
    Consumer Protection Act, 47 U.S.C. § 227;

b.  An injunction prohibiting Defendant from using an automatic telephone dialing system
    to call and text message telephone numbers assigned to cellular telephones without the
    prior express permission of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 4, 2019                     Respectfully Submitted:

By:     */s/ Andrew J. Shamis*
        **SHAMIS & GENTILE, P.A.**
        Andrew J. Shamis, Esq.
        Florida Bar No. 101754
        ashamis@shamisgentile.com
        Garrett O. Berg, Esq.

14

Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**EDWARDS POTTINGER LLC**
Seth M. Lehrman, Esq.
Florida Bar No. 132896
seth@epllc.com
425 North Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Tel: (954) 524-2820

*Counsel for Plaintiff*

15